UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DANIEL C. WALSH,                : | |
|     Plaintiff,             : | |
|                        : | CIVIL ACTION NO. |
| v.                       : | 3:01-cv-1872 (JCH) |
|                        : | |
| SERGEANT ERIC SOUSA,   : | |
| ET AL.,                   : | MARCH 25, 2004 |
|     Defendants.      : | |

**RULING: RE DEFENDANTS' PARTIAL MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 21]**

Plaintiff Daniel C. Walsh ("Walsh") brings this § 1983 action against seven members of the Naugatuck Police Department in their individual capacity ("the defendants"),[1] alleging various federal and state claims arising from an incident in which the police responded to a 911 emergency call that Walsh made while he was suffering from a mental illness. The incident resulted in injuries to Walsh and his arrest. All seven defendants have moved for partial summary judgment [Dkt. No. 21]. For the reasons that follow, the court grants the defendants' motion for partial summary judgment and dismisses the complaint against Captain Fortin in its entirety.

**I.     PROCEDURAL HISTORY**

Walsh filed this action on September 28, 2001. His barebones complaint, when read liberally, appears to seek to assert the following claims: a First Amendment free

---

[1] The defendants are Sergeant Eric Sousa, Officer Randy Ireland, Officer Americo Tavares, Officer Clyde Obar, Officer Paul Markette, Officer Theron Johnson, and Captain James Fortin.

speech claim; an "unreasonable or excessive bail bond" under the Eighth Amendment; claims for illegal search and seizure, as well as an excessive force claim, under the Fourth Amendment; a Fourteenth Amendment due process; a state law malicious prosecution claim; false arrest claims, apparently under both state and federal law; state law claims for assault and battery claims; and a state law intentional infliction of emotional distress claim. See Complaint at 6, ¶ 23-24 [Dkt. No. 1]. The complaint specifically seeks compensatory damages, punitive damages, and attorney's fees and costs. In their Answer and Special Defenses [Dkt. No. 13] ("Answer"), the defendants have asserted a number of defenses, including qualified immunity under federal law and governmental immunity under Connecticut law.

The defendants have moved for partial summary judgment [Dkt. No. 21] with respect to Walsh's free speech, excessive bail, due process, malicious prosecution, and false arrest claims. At the March 17, 2004 oral argument, Walsh withdrew his claim against Captain Fortin and his claims based on free speech, excessive bail, and due process against the remaining defendants. Further, the court notes that, apart from his Statement of Facts and memorandum opposing the motion, Walsh has submitted no evidence in opposition to the defendants' motion. In violation of Local Rule 56, see District of Connecticut Local Rules of Civil Procedure Rule 56(a)(3)("Each statement of material fact in a Local Rule 56(a) Statement by a movant or opponent must be followed by a citation to (1) the

affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial."), Walsh's Statement of Facts does not contain a single citation to the record, see Local Rule 9(c)(2) Statement in Opposition to Defendants' Motion for Partial Summary Judgment ("Pl's Statement of Facts") [Dkt. No. 24] at 2-4.

The court grants the defendants' motion. The court dismisses Fortin as a defendant as to all claims against him, and, as to the remaining defendants, enters judgment in favor of those defendants with respect to Walsh's free speech, excessive bail, malicious prosecution, due process, and false arrest claims.

## II.    FACTS[2]

On January 16, 2000, Walsh called 911 and said something to the effect of "I committed suicide", see Memorandum of Law in Support of Defendants' Motion For Summary Judgment ("Defs' Mem."), Ex. A: Walsh Dep. at 35, "my life is over," see id., and "they're all dead," see id., Ex. B: Walsh Dep. at 180. In his second deposition, Walsh stated: "I can't recall that night too well. I was–I think I said I'd commit suicide, and I am dead. They're all dead, and the thing of it is I don't recall exactly. I heard from the police report what they said I said." See id., Ex. B: Walsh Dep. at 180. When he made the call, Walsh was suffering from a mental illness. See Pl's Statement of Facts at 1, ¶ 2.

---

[2] The following recitation presents the facts in the light most favorable to Walsh but notes any material factual disputes between the parties.

Several members of the Naugatuck Police Department responded to Walsh's 911 call. The defendants assert that one of the named defendants, Captain James Fortin ("Fortin"), "was not one of the Officers who responded to the plaintiff's house of January 16, 2000." Local Rule 9(c)(1) Statement in Support of Defendants' Motion for Partial Summary Judgment ("Defs' Statement of Facts") [Dkt. No. 23] at 3, ¶ 14. In response, Walsh states that he lacks "sufficient information to proffer an admission or denial . . ." as to this statement. Pl's Statement of Facts at 2, ¶ 14. With the exception of this allegation concerning Fortin, neither party specifies exactly how many officers arrived on the scene, who they were, or when they arrived.

Before the police arrived at the house, Walsh had burned his own arm and cut himself with a knife. When the police arrived, Walsh emerged from the front door of his house with blood on his shirt. Sergeant Sousa ordered Walsh to put his hands above his head, and Walsh complied. Walsh was told to turn around in a complete circle so that the officers could visually inspect Walsh for any weapons. Walsh then began to walk back toward his house. After being ordered to stop, Walsh placed his hands on the front stairs that lead to the front door of his house.

Exactly what happened next is disputed and somewhat unclear. Walsh claims that he turned away from his house and toward the officers. According to Walsh, Officer Markette then tackled Walsh, Officer Obar landed on top of Walsh, and Officer Ireland

rushed to Walsh's location. Walsh claims that the officers knocked him to the floor[3] and assaulted him with blackjacks, their fists, and their feet, using profane language as they did so. See Pl's Statement of Facts at 3, ¶¶ 7-12.

The defendants state only that, "[a]fter the police arrived, *a scuffle* ensued involving Mr. Walsh and members of the Naugatuck Police Department, which the plaintiff claims constituted an assault, but which the defendants deny was an assault." Defs' Statement of Facts at 2, ¶ 6 (emphasis added). Walsh objects to this sentence only to the extent that it "characteriz[es] the police officers' conduct as a 'scuffle,'" Pl's Statement of Facts at 2, ¶ 6, but does not explain his objection apart from offering his own description of the event already described above.

There is no dispute that Walsh was hospitalized that evening for treatment of his injuries and transported the following day to the Psychiatric Ward of the Veteran's Hospital in West Haven. See Defs' Statement of Facts at 3, ¶¶ 8-11. Mr. Walsh's diagnosis at the [hospital] included "acute pyschosis." Id. at 3, ¶ 11. Walsh was held on a $5,000.00 bond. See Complaint at 4, ¶ 14.

---

[3] All parties agree that Walsh was outside. See Defs' Statement of Facts at 2, ¶ 5; Pl's Statement of Facts at 1, ¶ 5.

Walsh was charged with four counts: assault upon a police officer, breach of peace, reckless endangerment, and resisting or interfering with arrest,[4] in violation of Connecticut General Statutes §§ 53a-167c, 53a-181, 53a-63, and 53a-167a.  See Defs' Mem., Ex. E: Charge Sheet.  On May 23, 2000, a nolle prosequi ("nolle") was entered with respect to all pending charges against Walsh.  See Defs' Mem., Ex. F: Nolle Transcript.

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©));  Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000).  The moving party bears the burden of showing that no genuine factual dispute exists.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In assessing the record to determine if such issues exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir.1994).  "Credibility determinations, the weighing of the evidence, and

---

[4] Although the exact nature of the charges does not affect the outcome of this ruling, the court notes that the defendants' memorandum lists only three charges and does not mention the fourth charge for resisting or interfering with arrest.  See Defs' Mem. at 3.  See also Defs' Statement of Facts at 7, ¶ 7; Pl's Statement of Facts at 2, ¶ 7.

the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)).  Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

## IV. DISCUSSION

### A. State Law Malicious Prosecution Claim

The defendants move for summary judgment with respect to Walsh's malicious prosecution claim because the entry of a nolle defeats such a claim. The court agrees and grants summary judgment.

In order to demonstrate a cause of action for malicious prosecution, a plaintiff must show that the proceeding was terminated in his favor. See Singleton v. City of New York, 632 F.2d 185, 194-95 (2d Cir. 1980). This "favorable termination" of the criminal proceedings is an essential element of the malicious prosecution claim. See Pinaud v. County of Suffolk, 52 F.3d 1139, 1154 (2d Cir. 1995); Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992). "Proceedings are terminated in the accused's favor only when their final disposition is such as to indicate that the accused is not guilty." Konon v. Fornal, 612 F. Supp. 68, 70 (D.Conn. 1985).

A nolle prosequi is not a favorable termination of the type required to support a malicious prosecution claim. See Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003). Instead, Connecticut case law explicitly defines a nolle as "a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy,'" in contrast to a dismissal, which "is an act of court." Cislo v. City of Shelton, 240 Conn. 590, 599 n. 9 (Conn. 1997)(quoting State v. Lloyd,

185 Conn. 199, 201 (1981)). A nolle requires no findings of fact to determine the accuracy of the charges. Lloyd, 185 Conn. at 201. When a nolle is entered, the criminal defendant has the right to object to the nolle and demand a trial or dismissal. See Conn. Gen. Stat. § 54-56b. At least with respect to malicious prosecution claims, "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." Roesch v. Otorala, 980 F.2d at 853.

     The nolle as applied to the malicious prosecution charge in this case is analogous to New York's "Adjudication in Contemplation of Dismissal," which the Second Circuit found in Singleton was not a termination in the defendant's favor. See Singleton, 632 F.2d at 193-94. The New York adjudication discussed in Singleton begins as an "adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice." Id. at 188 n.1 (quoting N.Y. Crim. Proc. Law. § 170.55). Within the next six months after the adjournment, "upon application of the people . . . the court must restore the case to the calendar and the action must thereupon proceed." Id. If the action is not restored within six months, the action is deemed "dismissed within the interests of justice." Id. The nolle of this case is similar, albeit with the even longer window of thirteen months before the charges are deemed dismissed. The court therefore grants summary judgment in favor of the defendants with

respect to Walsh's malicious prosecution claim.

### B. False Arrest Claims

The defendants also move for summary judgment with respect to Walsh's false arrest claims, arguing that the entry of a <u>nolle</u> does not satisfy the favorable termination requirement necessary to state a claim for false arrest.[5]  The court does not reach this issue because it determines that the arrest, or, more accurately, the "seizure" of Walsh, was reasonable because it was supported by probable cause.  The court therefore grants summary judgment with respect to Walsh's false arrest claims.

At oral argument, Walsh pressed his false arrest claim on the theory that his "seizure" was wrongfully predicated on allegedly false charges of assault upon a police officer, breach of peace, reckless endangerment, and resisting or interfering with arrest, in violation of Connecticut General Statutes §§ 53a-167c, 53a-181, 53a-63, and 53a-167a.  However, the court is unpersuaded in light of the ample probable cause that existed for Walsh's seizure based on Conn. Gen. Stats. § 17a-503.  The other conduct for which Walsh was charged occurred, if at all, in connection with the defendants' seizure of Walsh based on § 17a-503 and, therefore, is properly considered as part of the malicious

---

[5] The defendants do not specify whether the state or federal false arrest claims, or both, are the subject matter of their motion.  The court assumes the motion for summary judgment applies to both claims.  The court concludes that analysis of the state claim is the same as that of the federal claim.  <u>See</u> <u>Birdsall</u>, 249 F. Supp. 2d at 171-72 (citing <u>Binette v. Sabo</u>, 244 Conn. 23, 35-47 (1998)).  Thus, the above analysis of the federal claim also controls the state claim.

prosecution claim. As stated above, such a claim cannot survive after the entry of a nolle. See supra at Section IV.A.

It is well established that "[a] § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." Kent v. Kent, 312 F.3d 568, 573 (2d Cir. 2002); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995)("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Thus, a finding of probable cause is a complete defense to an action for false arrest. See, e.g., Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

In determining whether police officers had probable cause to make an arrest, courts examine the "totality of the circumstances." Bernard, 25 F.3d at 102 (quoting Illinois v. Gates, 462 U.S. 213, 230 (1982)). "Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer, 63 F.3d at 119 (internal quotation marks omitted). If there are no material facts in dispute "as to the pertinent events and the knowledge of the officers," the question of probable cause may be determined as a matter of law. Weyant, 101 F.3d at 852; see also Singer, 63 F.3d at 118-19.

The court concludes that, based on the uncontested facts taken in the light most favorable to Walsh, his claim for false arrest cannot survive because the police's "seizure" of him was reasonable. Conn. Gen. Stats. § 17a-503 provides:

> Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself or herself or others or gravely disabled, and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section.

Conn. Gen. Stats. § 17a-503a. "According to the Second Circuit, the Fourth Amendment 'requires that an involuntary hospitalization 'may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" Williams v. Lopes, 64 F. Supp. 2d 37, 43 (D.Conn. 1999)(quoting Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993)).

Based on the uncontested facts, the police had "reasonable grounds" to believe that Walsh had psychiatric disabilities and was "dangerous to himself or herself or others or gravely disabled" and was "in need of immediate care and treatment." Id. The police arrived on the scene, reasonably believing that Walsh had made an emergency call stating either that he was dead or that he had committed suicide and that there were other people on the scene who were already dead. They then observed Walsh emerging from his house with blood on his shirt. Even if Walsh had fully complied with the police's orders to him, rather than walking back toward the house in violation of their commands and ultimately

turning to face the officers, the officers would have been justified in seizing him pursuant to Conn. Gen. Stats. § 17a-503 as a danger to himself and others and as someone in need of immediate care.  Accord Anthony v. City of New York, 00:CV4688, 2001 U.S. Dist. LEXIS 8923, at *3-5, *31-32 (S.D.N.Y. July 2, 2001), aff'd on other grounds, 339 F.3d 129, 137-40 (2d Cir. 2003)(police responding to a somewhat incoherent 911 call in which female caller said she was five years old and claimed that her husband "beat on her" and had a knife and a gun were justified in seizing pursuant to New York mental health statute); see generally Keeney v. City of New London, 196 F. Supp. 2d 190 (D.Conn. 2002)(seizure pursuant to Conn. Gen. Stats. § 17a-503a justified where officers knew individual was aggressive, that he was speaking incoherently, that he fled from the police and, further, were told that he had stopped taking his medication); Rzayeva v. Foster, 134 F. Supp. 2d 239, 22-23 (D.Conn. 2001)(seizure reasonable where officer had seen plaintiff's note threatening a hunger strike if she were not left alone, and where plaintiff threatened to cut her wrists and to throw herself out a third floor window when officer refused to leave her apartment).  On the undisputed record before the court, there was probable cause under Conn. Gen. Stats. § 17a-503 to seize Walsh.

V.    **CONCLUSION**

For the foregoing reasons, defendants' partial motion for summary judgment [Dkt. No. 21] is **GRANTED**.  The remaining claims of excessive force, assault and battery, and

intentional infliction of emotional distress, that were not the subject of the defendants' motion, remain pending.

**SO ORDERED.**

    Dated this 25th day of March, 2004, at Bridgeport, Connecticut.

                                  /s/ Janet C. Hall
                                  Janet C. Hall
                                  United States District Judge