## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANIEL C. WALSH | ) | CASE NO. |
|     Plaintiff | ) | 3:01CV-01872 (JCH) |
| | ) | |
| v. | ) | |
| | ) | |
| SARGEANT ERIC SOUSA, #S4 | ) | |
| OFFICER RANDY IRELAND, #19 | ) | |
| OFFICER AMERICO TAVARES, #27 | ) | |
| OFFICER CLYDE OBAR, #10 | ) | |
| OFFICER PAUL MARKETTE, #33 | ) | |
| OFFICER THERON JOHNSON, #11 | ) | |
|   Defendants | ) | |
| | ) | SEPTEMBER 27, 2004 |

### JOINT TRIAL MEMORANDUM

Pursuant to the court's Order dated May 12, 2004 and the United States District Court, District of Connecticut, Standing Order Regarding Trial Memoranda In Civil Cases, the plaintiff Daniel C. Walsh and defendants Eric Sousa, Randy Ireland, Americo Tavares, Caroline Obar, Paul Markette, and Theron Johnson respectfully submit their Joint Trial Memorandum.

1. ***Plaintiff's Trial counsel:***

> Timothy C. Moynahan, Esq., and
> Jason M. Lipsky, Esq.
> Moynahan, Minnella & Tindall, L.L.C.
> 141 East Main Street, P.O. Box 2242
> Waterbury, Connecticut 06722
> Tel. No. (203) 573-1411

375241

Fax. No. (203) 757-9313

***Defendants' Trial Counsel:***

James N. Tallberg, Esq..
Federal Bar Number ct17849
Updike, Kelly & Spellacy, P.C.
P.O. Box 231277 / One State Street
Hartford, CT 06123
Tel:  (860) 548-2600
Fax:  (860) 548-2680

2.    ***Jurisdiction:***  Jurisdiction of this court is invoked under the provisions of Sections 1331,

1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 United States Code.

3.    ***Jury/Non-Jury***:  This will be trial by jury.

4.    ***Length of Trial***:  The parties estimate that trial will take 3-4 days.

5.    ***Further Proceedings:***  None anticipated.

6.    ***Nature of Case:***

This is an action brought by the plaintiff to redress the claimed deprivation of rights secured

to the plaintiff by the Constitution and laws of the United States and the laws of the State of

Connecticut.  The plaintiff asserts claims of excessive use of force, assault and battery and intentional

infliction of emotional distress against each of the named defendants.  The plaintiff seeks monetary

damages, punitive damages and attorneys' fees from each defendant.

375241

*Plaintiff's Factual Contentions*

The plaintiff was an adult living in the Naugatuck, Connecticut.  The defendants were duly appointed officers of the Naugatuck Police Department, acting in their official capacity.  The defendants acted under color of law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the State of Connecticut and Town of Naugatuck.

On or about January 16, 2000, the defendants were summoned to the plaintiff's residence at 204 Morning Dove Road, in Naugatuck, Connecticut, in response to the plaintiff's "911" emergency telephone call.  Defendant Sousa ordered defendant Markette, defendant Obar and defendant Johnson into the area of 204 Morning Dove Road.  Defendant Sousa told dispatch to contact the Naugatuck Ambulance Corps and have them stand by on Horton Hill.  Defendant Sousa ordered defendant Ireland to take the shotgun out of the trunk and load the weapon.  Defendant Sousa instructed defendant Tavares to go and cover the rear of the house.  Defendant Ireland covered the front, south side of the residence.  Defendant Markette, defendant Obar, and defendant Sousa covered the front and north side of the house.  The plaintiff exited his house.  Defendant Johnson arrived on scene and used the spotlight on the police car to put a light on the plaintiff.  The plaintiff was in pants and a t-shirt.  There was blood on the plaintiff's arms and shirt.  Defendant Sousa ordered the plaintiff to put his hands above his head.  The plaintiff complied with the order.  The plaintiff was told to turn

around in a complete circle so that the defendants could visually inspect the plaintiff for any visible weapons.  The plaintiff again complied with the order.  The plaintiff then turned to defendant Sousa. Defendant Sousa told the plaintiff to turn and look at his house.  The plaintiff started to walk back towards his house.  The plaintiff was told to stop.  The plaintiff placed his hands on the stairs which lead into his front door.  The plaintiff turned away from his house and toward the defendants. Defendant Markette tackled the plaintiff.  Defendant Obar landed on top of the plaintiff and defendant Ireland rushed to the plaintiff's location.  The defendants thereupon assaulted the plaintiff, knocking him to the floor with their fists and police blackjacks, kicking the plaintiff and cursing and swearing at the plaintiff.

In an attempt to cover up their use of excessive force against the plaintiff, the defendants accused the plaintiff of committing the crimes of interfering with a police officer and assault upon a police officer, both in violation of §53-167 of the Connecticut General Statutes, as well as breach of peace and reckless endangerment, in violation of §53a-181 and §53a-63, respectively, of the Connecticut General Statutes.

As a direct and proximate result of the acts and omissions of the defendants herein described, the plaintiff was hospitalized for (10) ten days, required to undergo physical therapy, required to appear in the Connecticut Superior Court on several occasions as an accused criminal, was required to spend money to retain the services of an attorney to defend himself against the said false charges,

was caused to suffer great physical pain and agony and to undergo medical care and treatment to his economic loss, suffered bruises, contusions and lacerations over the upper portion of his body and knee, suffered a double fracture of his left humerus, and suffered loss of blood, pain, dizziness and fear, lost for a time the ability to enjoy life in the manner customary for him, and was caused great mental and emotional pain and anguish and suffering.

### Defendants' Factual Contentions

The defendants deny the plaintiff's allegations and admit only that on January 16, 2000, they responded to a 911 call at the plaintiff's residence.  The defendants contend that the plaintiff caused his own injuries and that his mental disturbance lead him to react violently when the police tried to help him.

### Legal Issues Presented by Plaintiff

a.      Did the defendants use excessive force against the plaintiff?

b.      Did the defendants subject the plaintiff to assault and battery?

c.      Did the defendants intentionally inflict extreme emotional distress upon the plaintiff?

d.      Is the plaintiff entitled to compensatory damages, and if so, in what amount?

e.      Is the plaintiff entitled to punitive damages, and if so, in what amount?

f.      Is the plaintiff entitled to attorneys' fees under 42 U.S.C. Section 1988?

375241



g.    Is the plaintiff entitled to costs?

***Legal Issues Presented by Defendants***

There are three legal issues in this case: whether the defendants can be held liable for excessive force, assault and battery, or intentional infliction of emotional distress. In addition, the defendants contend that, under the doctrine of qualified immunity and governmental immunity, they cannot be held liable.

7. ***Trial by Magistrate Judge:*** The parties do not stipulate to trial by Magistrate Judge.

8 ***List of Witnesses***

The plaintiff may call the following witnesses to the stand:

Daniel C. Walsh, Naugatuck, CT (the plaintiff);

Sergeant Eric Sousa (defendant)

Officer Randy Ireland (defendant)

Officer Americo Tavares (defendant)

Officer Clyde Obar (defendant)

Officer Paul Markette (defendant)

Officer Theron Johnson (defendant)

Captain James Fortin (Naugatuck Police Department)

Cheryl Wilde, 205 Morning Dove Rd., Naugatuck, CT

David Wilde, 205 Morning Dove Rd., Naugatuck, CT

375241

Dr. Sidney S. Horowitz, 133 Scovill St., Waterbury, CT

Dr. Gerard Abidor, 435 New Haven Rd., Derby, CT

Carl Lawson

A representative/records keeper of the VA Medical Center, West Haven, CT

A representative/records keeper of Waterbury Hospital, Waterbury, CT

A representative/records keeper of Naugatuck Ambulance

Dr. Kenneth Allen

Dr. Stephen Stein

M. Sarof, MSW

Plaintiff reserved the right to supplement this disclosure prior to the pretrial conference.

***Defense Witnesses:***

(1)     **Eric Sousa**
        Naugatuck Police Department
        211 Spring Street
        Naugatuck, CT 06770

        *Brief Summary of Testimony*:

        Officer Sousa will testify regarding his training and service as a Naugatuck Police
        Officer.  In particular, he will testify to the events of January 16, 2000, including his
        interactions with plaintiff Daniel Walsh.

        *Anticipated Duration of Testimony*:

        Approximately one hour.

375241

**(2)**   **Randy Ireland**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Officer Ireland will testify regarding his training and service as a Naugatuck Police Officer. In particular, he will testify to the events of January 16, 2000, including his interactions with plaintiff Daniel Walsh.

*Anticipated Duration of Testimony*:

Approximately one hour.

**(3)**   **Americo Tavares**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:
Officer Tavares will testify regarding his training and service as a Naugatuck Police Officer. In particular, he will testify to the events of January 16, 2000, including his interactions with plaintiff Daniel Walsh.

*Anticipated Duration of Testimony*:

Approximately one hour.

**(4)**   **Caroline O'Bar**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:

375241

Officer O'Bar will testify regarding her training and service as a Naugatuck Police Officer. In particular, he will testify to the events of January 16, 2000, including her interactions with plaintiff Daniel Walsh.

*Anticipated Duration of Testimony*:

Approximately one hour.

**(5)** **Paul Markette**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Officer Markette will testify regarding his training and service as a Naugatuck Police Officer. In particular, he will testify to the events of January 16, 2000, including his interactions with plaintiff Daniel Walsh.

*Anticipated Duration of Testimony*:

Approximately one half hour.

**(6)** **Theron Johnson**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Officer Johnson will testify regarding his training and service as a Naugatuck Police Officer. In particular, he will testify to the events of January 16, 2000, including his interactions with plaintiff Daniel Walsh.

375241

*Anticipated Duration of Testimony*:

Approximately one half hour.

**(7)    Ron Raginoski**
Naugatuck Police Department
211 Spring Street
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Mr. Raginoski may testify regarding his training and service as dispatcher for the Naugatuck Police Department.  In particular, he may testify regarding the plaintiff's 911 call on January 16, 2000.

*Anticipated Duration of Testimony*:

Less than one hour.

**(8)    Dr. Matthew R. DiCaprio**
VA Connecticut Healthcare System
950 Campbell Avenue
West Haven, CT 06516

*Brief Summary of Testimony*:

Dr. DiCaprio may testify regarding his treatment of the plaintiff subsequent to the incident that is the subject of this complaint.

Less than one hour.

**(9)    Dr. Robert N. Margolis**
VA Connecticut Healthcare System
950 Campbell Avenue
West Haven, CT 06516

375241

*Brief Summary of Testimony*:

Dr. Margolis may testify regarding his treatment of the plaintiff subsequent to the incident that is the subject of this complaint.

Less than one hour.

**(10)    Dr. Dwarakanath Vuppalapati**
VA Connecticut Healthcare System
950 Campbell Avenue
West Haven, CT 06516

*Brief Summary of Testimony*:

Dr. Vuppalapati may testify regarding his treatment of the plaintiff subsequent to the incident that is the subject of this complaint.

Less than one hour.

**11)    Dr. Catherine Chiles**
VA Connecticut Healthcare System
950 Campbell Avenue
West Haven, CT 06516

*Brief Summary of Testimony*:

Dr. Chiles may testify regarding his treatment of the plaintiff subsequent to the incident that is the subject of this complaint.

Less than one hour.

**12)    Dr. Thomas Reinhardt**
Waterbury Hospital

*Brief Summary of Testimony*:

Dr. Reinhard may testify regarding his treatment of the plaintiff subsequent to the incident that is the subject of this complaint.

Less than one hour.

**(13)    Ambulance Attendant Palumbo, Esq.**
Naugatuck Volunteer Ambulance
246 Rubber Avenue
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Ambulance Attendant Palumbo may testify regarding the his observations of Mr. Walsh on the night of the incident that is the subject of this action.

*Anticipated Duration of Testimony*:
Less than one hour.

**(14)    Ambulance Attendant Macarelli**
Naugatuck Volunteer Ambulance
246 Rubber Avenue
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Ambulance Attendant Macarelli may testify regarding the his observations of Mr. Walsh on the night of the incident that is the subject of this action.

*Anticipated Duration of Testimony*:
Less than one hour.

**(15)    Ambulance Attendant Vielette**
Naugatuck Volunteer Ambulance
246 Rubber Avenue
Naugatuck, CT 06770

*Brief Summary of Testimony*:

Ambulance Attendant Vielette may testify regarding the his observations of Mr. Walsh on the night of the incident that is the subject of this action.

*Anticipated Duration of Testimony*:
Less than one hour.

9.    ***Deposition Testimony:***  None anticipated.

10.   ***Interrogatories/Requests to Admit:***  None presently anticipated.

11.   ***Exhibits***

The plaintiff may introduce some or all of the following exhibits:

Exhibit A:    911 Transcript and Tape

Exhibit B:    Photographs of Dan Walsh (12) depicting injuries sustained by Plaintiff

Exhibit C:    Police Report of Naugatuck Police Department

Exhibit D:    Medical Records VA Hospital

Exhibit E:    Medical Records Waterbury Hospital

Exhibit F:    Medical Records Naugatuck Ambulance

Exhibit G:    Medical Records Dr. Abidor

Plaintiff reserved the right to supplement this disclosure prior to the pretrial conference.

***Defense Exhibits:***

(1)    Photographs of Plaintiff's Home at 204 Morning Dove Lane

(2)     VA Hospital Medical Records

(3)     Waterbury Hospital Medical Records

(4)     Naugatuck Volunteer Ambulance Run Sheet

(5)     Audio Tape of Plaintiff's January 16, 2000 911 Call

(6)     Transcript of Audio Tape

(7)     Naugatuck Police Reports for Incident No. 00-1379

(8)     Police Emergency Examination Request of 1/17/00

(9)     Eight Photographs of Plaintiff's Residence on January 16, 2000

12.    ***Anticipated Evidentiary Issues:***

The parties plan to file any Motions in Limine 7 days prior to the October 19, 2004 Pretrial.

13.    ***Motions in Limine***:

The parties plan to file any Motions in Limine 7 days prior to the October 19, 2004 Pretrial.

14.    ***Glossary:***  Not applicable.

15.    ***Proposed Voir Dire Questions and Jury Instructions***

<u>See</u> Exhibits A and B, attached hereto.

375241

14

THE PLAINTIFF

By:  _Jasin M. Lipsky (by JMT)_
JASON M. LIPSKY, ESQ.
MOYNAHAN, MINNELLA & TINDALL LLC
141 East Main Street, P.O. Box 2242
Waterbury, Connecticut 06722
Federal Bar No. ct18332
Tel. No. (203) 573-1411
Fax. No. (203) 757-9313


DEFENDANTS
SARGEANT ERIC SOUSA, OFFICER RANDY
IRELAND, OFFICER AMERICO TAVARES,
OFFICER CAROLINE OBAR, OFFICER PAUL
MARKETTE, and OFFICER THERON JOHNSON

By:_____
JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17489
UPDIKE, KELLY & SPELLACY, P.C.
One State St., P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600

375241

16

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing Motion was mailed in the United States mail, First Class, postage prepaid this 27ᵗʰ day of September, 2004, to the following:

Timothy C. Moynahan, Esq.
Jason M. Lipsky, Esq.
Moynahan, Ruskin, Mascolo & Minnella
141 East Main Street
Waterbury, CT   06722-2242

By:_____
JAMES N. TALLBERG, ESQ.
UPDIKE, KELLY & SPELLACY, P.C.

375241

# EXHIBIT A

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

The plaintiff's proposed questions to be submitted to the jury panel are:

1. This case involves the plaintiff's claim against police officers from the Naugatuck Police Department. Do you hold the view that police officers should be immune from civil lawsuits?

2. Are you related to or close friends with anyone employed in the field of law enforcement? If so, could you be fair and impartial in this case?

3. Are you inclined to give any special weight to a police officer's testimony in comparison to other witnesses in the case?

4. Do you have an opinion about which is more important – "law and order" or preserving constitutional rights? If so, what is your opinion?

5. Have you ever had any dealings with the Naugatuck Police Department or its police officers? Please explain. Have you ever had any dealings with local police officers in your community? Please explain.

6. Have you been a plaintiff, defendant or witness to a lawsuit? If so, please explain.

7. This is a lawsuit for civil rights violations brought by an individual citizen against police officers. Is there any reason why you would have difficulty being fair and impartial as a juror given these facts?

8. Have you ever been arrested?

18

9.  Do you believe that private citizens have the right to bring a lawsuit against the police?

10. Do you understand that the plaintiff in this lawsuit must only prove his case by a preponderance of the evidence, in other words, by the better or weightier evidence, and that he does not have to satisfy the criminal standard of proof beyond a reasonable doubt?

11. Assuming the plaintiff proves his case, do you have any problem making an award of money damages in his favor?

12. Are you hesitant to enter an award of money damages against police officers?

13. At the end of the case the judge will instruct you on the law.  Can you follow his instructions even if you disagree with it?

14. Will you decide the case solely on the evidence presented to you?

15. Will you consider each and every element of damages as explained to you by the judge.

16. Do you believe that there are either too many or too few lawsuits in this country?

17. Have you followed any news reports regarding proposals to change our civil justice system?

18. Please describe the story or stories you have followed.

19. Do you have a feeling one way or another about a person who comes to court asking for money damages?  Do you recognize the right of a person to come to court to ask for money damages?

20. At the end of the case the judge will instruct you on the law.  Can you follow his instructions even if you disagree with some or all them?

21. Will you decide the case solely on the evidence presented to you?

22. Assuming that you believe that the plaintiff has proven his case, will you consider each and every element of damages as explained to you by the judge in making your damage award?

## DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS

The defendants respectfully submit the following Proposed Voir Dire Questions:

1. The plaintiff in this case is Daniel C. Walsh.  To the best of your knowledge, are you or any member of your family acquainted with Mr. Walsh?

2. The defendants in this case are Eric Sousa, Randy Ireland, Americo Tavares, Caroline Obar, Paul Markette, and Theron Johnson, who are employed as police officers by the Borough of Naugatuck.  To the best of your knowledge, are you or any member of your family acquainted with either of the officers or acquainted with any employee of the Borough of Naugatuck?

3. The attorney for the defendants in this case is James Tallberg.  Attorney Tallberg is associated with the law firm *Updike, Kelly & Spellacy*.  To the best of your knowledge, are you or any member of your family acquainted with either Attorney Tallberg or the law firm *Updike, Kelly & Spellacy*?

4. Have you or anyone close to you ever been employed in any capacity by any law enforcement agency? (If NO, have you or anyone close to you ever applied for a job in law enforcement?)

5. What contact have you had with police officers or other law enforcement officers through your work? In your neighborhood? In your social life? How much faith (or respect) would you say you have in the police? In the Naugatuck Police Department?

6. Do you think that police receive any kind of special treatment about how to testify in court? If YES: What kind of training? Why? How do you think the training affects how they present themselves in court? If NO: How do you think they prepare themselves to testify?

7. What have you read or heard about incidents where police have used excessive force?

8. What are your opinions about how the problem of police misconduct ought to be handled?

9. What's your immediate reaction when you hear that someone is charging the police with brutality?

10. In the spring of 1992, the police officers who beat Rodney King in Los Angeles where found not guilty by a state court jury. Do you remember the verdict? What was your reaction to the verdict? What was your reaction to the events in Los Angeles and other cities that followed the state court verdict? Why do you think it happened? What sorts of discussions did you have with others about the upheaval after the verdict?

11. What have you read or heard about recent cases of police brutality?

12. Are you familiar with any cases in Connecticut about police brutality? How are you familiar? Which cases?

3

13.  Have you ever expressed opinions in conversations with others concerning the problem of police brutality?  If so, what opinions have you expressed?

14.  What problems do you have with the idea of an ordinary citizen suing a police officer because of actions he claims he took in the line of duty?

15.  Some people think that even though the police make mistakes and arrest the wrong person or use more force than necessary, that is the price we have to pay for police protection.  What is your opinion about that?

16.  To the best of your knowledge, have you, a member of your family or a close friend ever had an unpleasant experience with a police officer?

17.  If your response to question 17 is affirmative, describe the unpleasant experience of which you are aware.

18.  Do any of you have an unfavorable opinion about police officers in general?

19.  If your response to question 18 is affirmative, describe the nature of the unfavorable opinion that you hold concerning police officers.

20.  Do you believe police officers make mistakes in the performance of their duties?

21.  What are your general views about the police and the role of police in the community?

22.  Have you ever witnessed an incident (other than what you have seen or heard regarding this case) where the police used force on someone?  (If YES:  Where and when did it occur?  How did you feel the police officer conducted him/herself?)

23.  Are you aware of any media coverage, either television or newspapers, regarding this lawsuit?

24.  Have you, a member of your family, or a close friend ever been arrested?

25. Have any of you ever been involved in a domestic disturbance of any sort to which a police officer was required to respond?

26.  Have you read, heard or been exposed to unfavorable comments about the Naugatuck Police Department?

27.  Do any of you believe, for any reason, that police officers have a tendency to abuse their authority?

28.  Do any of you believe that the testimony of a policy officer is entitled to greater credibility than that of any other witness, merely by virtue of the fact that the testimony comes from a police officer?

29.  Have you or a member of your family ever sued a police officer for any reason?

30.  Do you believe that, merely because the defendants have been accused of violating the plaintiff's constitutional rights, they are probably guilty of some wrongdoing?

31.  If you are selected to sit on this jury, the Court will instruct you on the law which you must apply to the facts of this case as you find them to be.  One of the Court's instructions will inform you that the burden of proof for all material facts rests with the plaintiff.  Do you understand that it is the plaintiff's responsibility to prove every fact essential to his case?

32.  Is there any matter not covered by these questions that you think should be brought to the attention of the Court because it would affect your ability to be a fair an impartial juror?

33.  Is there any matter that you would prefer to discuss privately with the judge?

34.  Do you have any problems at home or work that might interfere with your ability to concentrate on the case during trial?

35.  Do you have a medical condition that would make it difficult for you to serve as a juror?

36.  What is the condition of your hearing?  Eyesight?

37.  As of today, have you formed any opinions about this case?

38.  Is there any particular reason that you would like to be a juror on this case, or would not like to be a juror on this case?

# EXHIBIT B

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

### INTRODUCTION

The Plaintiff brought this lawsuit to obtain justice for what he contends were violations of his rights under the United States Constitution -- specifically his right to be free from unreasonable and excessive force when being apprehended by police officers. The Plaintiff also has brought claims under federal and state law for assault and battery and intentional infliction of emotional distress.

Federal law provides that any individual may seek redress in this Court, by way of money damages, against any person or persons who, under color of State law, deprives that individual of any of his constitutional rights.

### FEDERAL LAW TO BE APPLIED

The Plaintiff brought this lawsuit because he asserts that his rights under the Fourth Amendment of the Constitution of the United States were violated, that is, his right to be free from police officers' use of unnecessary, unreasonable and excessive force against him. The federal law to be applied in this case is the civil rights law known as Section 1983 of Title 42 of the United States Code, which provides a remedy for people who have been deprived of their constitutional rights under color of state law. Section 1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom of usage of any

375241

State or Territory of the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

### COLOR OF STATE LAW

Federal law provides that any person may seek justice from the legal system, by way of money damages, against any person or persons who, acting under color of state law, deprives that person of any of his constitutional rights. Acting under color of state law simply means acting in one's official capacity as a police officer. There is no dispute that the Defendants were acting in their official capacities. Therefore, I instruct you to find that if each defendant was acting as a police officer, then each was acting under color of law for purposes of Section 1983. Monroe v. Pape, 365 U.S. 167 (1961).

### UNNECESSARY, UNREASONABLE, EXCESSIVE FORCE

The Plaintiff claims that the defendants each used unreasonable force against him. A person, even if he is being lawfully detained, has the right under the Fourth Amendment of the United States Constitution to be free from the use of unreasonable force against him by police officers. Tennessee v. Garner, 471 U.S. 1 (1985).

2

To establish an excessive force claim, the plaintiff must demonstrate that the force used by the officers, in light of the facts and circumstances confronting them, was unreasonable.  Finnegan v. Fountain, 915 F.2d 817, 823 (2nd Cir. 1990). The reasonableness inquiry is based on whether the officer's conduct was "objectively reasonable in light of the circumstances confronting them." Id. at 396-7.  Handcuffing an arrestee more tightly than necessary can constitute excessive force. LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000); Alexander v. County of Los Angeles, 64 F.3d 1315 (9th Cir. 1995). Pointing a gun at an arrestee can in the right circumstance constitute unreasonable force. Black v. Stephens, 662 F.2d 181 (3d Cir. 1981);  Petta v. Rivera, 143 F.3d 895 (5th Cir. 1998). Serious injury is not an essential element of an unreasonable force case. See, e.g., Holmes v. City of Massillon, Ohio, 78 F. 3d 1041 (6th Cir. 1996); Wilks v. Reyes, 5 F. 3d. 412, 416 (9th Cir. 1993); Riley v. Dorton, 93 F. 3d 113 (4th Cir. 1996).

Therefore, I instruct you that if you find that any defendant used more or greater force than was reasonably necessary under the circumstances of this case, then you must find that defendant is liable for a violation of Mr. Walsh's Fourth Amendment constitutional rights.  Graham v. Connor, 490 U.S. 386 (1989); Jenkins v. Averett, 424 F2d 1228 (4th Cir. 1970); Monroe v. Pape, 365 U.S. 167 (1961).

## PLAINTIFF NOT REQUIRED TO PROVE SPECIFIC INTENT, MOTIVATION OR SPECIFIC STATE OF MIND

It is not necessary to find that the Defendants had any specific intent to deprive the Plaintiff of his civil rights in order to find in favor of the Plaintiff.  The Plaintiff is entitled to relief if the

Defendants acted in a manner which resulted in a violation of the Plaintiff's rights or if the defendant acted in reckless disregard of the plaintiff's rights. Reckless disregard of the plaintiff's rights simply means not caring whether or not those rights were being violated. Monroe v. Pape, 365 U.S. 167 (1961); Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989).

As to the defendants' excessive and wrongful use of force against the Plaintiff, each officer's intent or motivation or specific state of mind is irrelevant to the question of whether the arrest or force used against the Plaintiff was unreasonable. Graham v. Connor, 490 U.S. 386 (1989). It makes no difference whether the force applied was done in "good faith." Id. The Plaintiff is not required to prove that the defendants acted with any specific or particular intent or motivation or state of mind in order for you to find that the defendants made an unnecessary, unreasonable or false arrest or for you to find that the force used against the Plaintiff was unreasonable or excessive in violation of his constitutional rights. Therefore, I instruct you that in determining whether the defendants falsely arrested Plaintiff or used unreasonable force against the Plaintiff in violation of his constitutional rights, you are not examine the arrest and the force which was used under all the circumstances the defendants faced. You are not to attempt to determine the defendants' particular intent or motivation or state of mind in making such false arrest or using such force.

4

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff also alleges that the defendant intentionally inflicted emotional distress upon him in violation of Connecticut law.  Under Connecticut law, when a person engages in conduct which involves an unreasonable risk of causing emotional distress to another and that emotional distress is of a kind which, if caused, might adversely affect the plaintiff in a serious way, and the plaintiff actually has suffered such emotional injury, then the plaintiff is entitled to recover any damages which you determine are fair and just to compensate for the emotional distress he has suffered.  It is not necessary for there to be any physical injury in order for the plaintiff to recover.  All that is necessary is that the conduct of the defendant has been outrageous, that it has been undertaken under such circumstances that a reasonable person would have known that it was likely to cause emotional distress, and that severe emotional distress actually has resulted.  If you find these facts to have been proven, then the defendant should be found liable to the plaintiff for the intentional infliction of emotional distress under Connecticut state law.  [Buckam v. People Express, Inc., 205 Conn. 166, 173 (1987); Murray v. Bridgeport Hospital, 40 Conn. Sup.56 (Conn. Super. 1984); Buckley v. Lovallo, 2 Conn. App. 579 (1984); Petyan v. Ellis, 200 Conn. 243 (1986).]

## WEIGHT OF POLICE OFFICER'S TESTIMONY

The testimony of police officers is entitled to no special weight.  A police officer who takes the witness stand subjects his testimony to the same examination and the same tests as any other

5

witness does, and in the case of police officers you should not believe them merely because they are police officers. You should view and balance a police officers' testimony just as carefully as you would any other witnesses' testimony. People employed by the government, including police officers, do not stand in any higher station in the community than other persons, and their testimony is not entitled to any greater weight.

### DUTY OF POLICE OFFICERS TO ENFORCE THE LAW AND PRESERVE THE PEACE

Police officers have an affirmative duty to enforce the law and preserve the peace. This includes stopping other police officers from violating the law. A police officer may not ignore the duty imposed by his office and fail to stop other officers who apply unreasonable and excessive force upon the Plaintiff. Thus, if you find that any police officer, violated any of the civil rights of the plaintiff, and that the other defendant officers did nothing to prevent that officer (s) from committing such a violation, although in a position to do so, then the defendant officer who failed to prevent his fellow officer from violating Plaintiff's constitutional rights is himself is liable for the unlawful act by the first officer. Gagnon v. Ball, 696 F.2d 17 (2d Cir. 1982); Zapico v. Bucyrus-Erie Co., 579 F.2d 714, 718 (2d Cir. 1978); Bruner v. Dunaway, 684 F.2d 422 (6th Cir 1982); Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir. 1972).

In short a police officer may not ignore the duty imposed by his or her position and fail to stop other officers who apply unreasonable force or otherwise act unlawfully against a third person.

Therefore, I instruct you that if you find that any police officer, failed to use appropriate and reasonable means to prevent infringement of Plaintiff's constitutional rights, or acted in such a manner as to allow or cause the situation to escalate into violation of Plaintiff's constitutional rights, or if one officer committed a violation of Plaintiff's constitutional rights, and the other Officers did nothing to prevent such violation, then you shall find that those officers are also liable for first officer's conduct.

### SECTION 1983 DAMAGES

In a Section 1983 case, proof that one or more defendants violated the Plaintiff's constitutional rights entitles the Plaintiff to monetary damages. The award of money damages in a Section 1983 case is an extremely important way to protect the U.S. Constitution's guarantee against the violation of Plaintiff's Fourth Amendment constitutional rights by police officers. Section 1983 damage awards are intended not only to provide compensation for the victims of past abuses, but also to serve as a deterrent against future constitutional violations. Owen v. City of Independence, 445 U.S. 622, 651, reh'g denied 446 U.S. 993 (1980). There are three types of money damages available to a Section 1983 Plaintiff, (1) nominal damages, (2) actual damages, and (3) punitive damages. I will now explain the difference between these three types of damage awards.

A.    **Nominal damages** are usually awarded to those who suffer a violation of their rights but are unable to show measurable injury or loss other than the violation of constitutional rights

7

alone.  Carey v. Piphus, 435 U.S. 247, 266 (1978).  Therefore, if you find that the Plaintiff has shown that as a result of wrongful conduct by one or more of the defendants, he suffered some measurable injury or loss beyond the violation of his constitutional rights alone, you may award him damages beyond nominal damages.

      **B.**    <u>**Actual or compensatory damages**</u> is that amount of money damages which will reasonably and fairly reimburse the Plaintiff for any harm which wrongful conduct by one or more of the defendants was a substantial factor in bringing about. These type of damages include money actually spent or debts incurred as a result of the harm suffered, as well as emotional anguish, impairment of reputation, personal humiliation, and other types of suffering. In fixing compensatory damages you should determine the amount of money which will, in your judgment, reasonably and fairly compensate the plaintiff for any harm of any kind which was proximately caused by the wrongful conduct of the defendant. Therefore, I instruct you that if you find that Mr. Walsh suffered some measurable injury or loss beyond the violation of his constitutional rights alone, you may award him actual or compensatory damages.

      In determining the amount of actual or compensatory damages to award Mr. Walsh, I instruct you to consider the following:

     1)      Medical expenses;

     2)      Physical harm and injuries suffered by the Plaintiff during and after the impairment or

injury received, including loss of freedom;

3)      Physical pain or discomfort; and

4)      The loss Plaintiff sustained in having his everyday daily and leisurely life's activities
interrupted or impaired;

5)      The reasonable expense of legal services incurred by the Plaintiff to defend himself
against charges brought against him as a result of the incident which is the subject of
this lawsuit.

Reinstatement of Torts II §431; Guzman v. Western State Bank, 540 F2d 948 (8th Cir. 1976).

Actual or compensatory damages also include general damages which are designed to
compensate for emotional harm and mental distress during and after the impairment or injury
received. Guzman v. Western State Bank, 540 F2d 948, 953 (8th Cir. 1976). While this class of
damages may be more difficult to quantify, they nonetheless are compensable. In determining how to
compensate Mr. Walsh for emotional and mental distress, some of the things you can consider are
damages from injuries resulting from the invasion of the Plaintiff's privacy, interference with his
personal development, stigmatization, and loss of reputation and dignity, and may include
nightmares, fear, anger, anxiety, nervousness, stomach upset, depression, embarrassment, and
humiliation. Brandon v. Allen, 719 F2d 151, 154-55 (6th Cir. 1983), rev'd and remanded on other
grounds sub nom., Brandon v. Holt, 105 SCT 873 (1985); Corriz v. Noranjo, 667 F2d 893, 897-98

(10th Cir. 1981) <u>cert. dismissed</u> 458 U.S. 1123 (1982); <u>Keyes v. Lauga</u>, 635 F.2d 330, 336 (5th Cir. 1981).

Actual loss is not limited to expense or debts incurred. Injuries of any kind are to be fully and fairly compensated if they are proximately caused by the constitutional violation. You should award damages in such a case to the extent that the loss or injury can be reasonably quantifiable and not simply on the basis of the inherent value of the rights violated. The damages you should award should be proportional to the actual loss sustained, whether that loss is physical or mental or emotional or one of the other types of losses I have previously discussed with you. <u>Memphis Community School District v. Stachura</u>, 477 U.S. 299 (1986); <u>Wheatley v. Beetar</u>, 637 F.2d 863, 865-868 (2d Cir. 1981); <u>Ellis v. Blum</u>, 643 F.2d 68, 82-84 (2d Cir. 1981).

**C.    <u>Punitive or Exemplary Damages</u>**

You may also decide whether the plaintiff is entitled to the award of any punitive or exemplary damages. In a case like this one, you may consider whether the acts or omissions of the defendants were so serious that the defendants should pay a penalty so that in the future others will be deterred from engaging in the same conduct. Exemplary or punitive damages may be awarded to Mr. Walsh separately and in addition to actual or compensatory damages.  Exemplary or punitive damages may be awarded even though you find that the Plaintiff is not entitled to actual or compensatory damages.  Exemplary or punitive damage awards serve two purposes: (1) to punish a

10

defendant or defendants for extreme or outrageous conduct, and (2) to deter or prevent a defendant

and others like him from committing such conduct in the future.  <u>Smith v. Wade</u>, 461 U.S. 301

(1983).

Punitive damages may be awarded when the jury determines that one or more defendants has

or have acted in any <u>one</u> of the following ways:

a)      Willfully or maliciously violated the Plaintiff's constitutional rights;

b)      Intentionally acted in gross disregard of the Plaintiff's rights;

c)      Acted or failed to act recklessly or with indifference as to whether or not the Plaintiff's

rights would be violated.

<u>Smith v. Wade</u>, 461 U.S. 301 (1983).

"The purpose of punitive awards is to deter defendants as well as other like them

from similar conduct in the future…This is especially true where police officers are involved. The

Supreme Court has stated that the 'focus is on the character of the defendant's conduct – whether it is

the sort that calls for deterrence and punishment over and above that provided by compensatory

awards.' In a tort that requires a 'particular antisocial state of mind' such as malicious prosecution,

the 'improper motive' of the defendant is a reason to award punitive damages." <u>Lee v. Edwards</u>, 906

F. Supp. 94, 98-99 (D. Conn. 1995).

Therefore, I instruct you that if you find that any defendant has committed such conduct, then

you should award punitive damages to Mr. Walsh.  <u>Smith v. Wade</u>, 461 U.S. 30 (1980); <u>Stolberg v.</u>

<u>Board of Trustees</u>, 474 F,2d 489 (2d Cir. 1973); <u>McFadden v. Sanchez</u>, 710 F.2d 907 (2d Cir. 1983).

## X.    ADDITIONAL REQUESTS

The parties respectfully request the right to supplement their request for jury instructions after

the evidence and prior to the charging conference. This request is made given that the plaintiff cannot

reasonably anticipate how the evidence will be presented and what instructions, in addition to the

foregoing will be necessary to enable the jury to reach their verdict.

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS

The defendants respectfully submit the following Proposed Jury Instructions:

### REQUEST TO CHARGE #1

### NATURE OF THE CLAIM

The plaintiff is seeking redress for the alleged violations of his rights under the United States Constitution.  The constitutional rights that the plaintiff claims the defendants violated are his right to be free from the use of excessive force.

You are instructed as a matter of law that under the Fourth and Fourteenth Amendments to the Constitution of the United States, every citizen of every state has the right to be free from the use of excessive force during an otherwise lawful arrest.

Federal law provides that any individual may seek redress in this court, by way of money damages, against any person or persons who, under color of State law, deprives that individual of any of his or her constitutional rights.

In order to prove his claim, the burden is upon the plaintiff to prove each of the following by a preponderance of the evidence:

    a.   That the defendant committed acts that violated the plaintiff's federal constitutional right that has been described to you;

    b.   That in so doing the defendant acted under color of the laws of the State of

13

Connecticut; and,

c.  That the defendants' acts were the legal cause of the plaintiff's damages.

42 U.S.C. §1983
Monroe v. Pape, 365 U.S. 167 (1960)

14

## **DEFENDANTS' REQUEST TO CHARGE #2**

**COLOR OF LAW**

First, let me explain to you what acting under color of law means. "Acting under color of law" simply means acting in one's capacity as a police officer. There is no dispute that at the time of the plaintiff's arrest the defendants were police officers for the City of Naugatuck acting in their official capacities as police officers. Thus, the defendants were acting under color of law.

## **DEFENDANTS' REQUEST TO CHARGE #3**

## **DEPRIVATION OF CONSTITUTIONAL RIGHTS**

The second issue you must consider is whether the defendant deprived the plaintiff of a constitutional right. To prove his claim, plaintiff must establish that more likely than not

(1)     the defendants committed the acts alleged by the plaintiff; and

(2)     those acts resulted in the deprivation of a constitutional right or rights.

Once again, plaintiff has claimed that the defendant officers by their conduct caused him to be deprived of his Fourth Amendment right to be free from false arrest, the excessive and unreasonable use of force, and unreasonable seizure.  I shall address each of these claims in turn.

## REQUEST TO CHARGE #4

### UNREASONABLE FORCE

The plaintiff claims that the defendants used unreasonable force while responding to a 911 call on January 16, 2000.  A person, even if he is being lawfully apprehended by the police, has a constitutional right to be free from unreasonable force.  An officer, on the other hand, is entitled to use such force as a reasonable person would think is required to protect the officer, to protect a third party, and/or to take one whom is arrested into custody.  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  However, a police officer may not use force beyond that reasonably necessary to accomplish her lawful purpose.  Likewise, a person is not justified in using physical force to resist an arrest regardless of whether the arrest is legal or illegal.

The particular use of force by a police officer must be judged form the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Your assessment of reasonableness must allow for the fact that officers are often required to make split-second judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation.  It is for you to decide in this case whether the force used was excessive or unreasonable.

You are instructed that a police officer is free to exercise his discretion as long as he does not

17

trample upon clearly established legal rights.  The rationale behind the law rests on the notion that

police action should not be subjected to retroactive application of newly created legal standards.

Where clear legal rights are not involved, it is better to have a policy that encourages action without

fear of Monday morning quarterbacking.  Therefore, if you find that the defendant officers, in light of

all the testimony you have heard during this trial, acted in a reasonable manner, your verdict must be

in favor of the defendants.

O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993)
Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct., 280, 288, 69 L.Ed 543 (1925)
United States v. Watson, 423 U.S. 411, 421-23, 96 S.Ct. 820, 287-28, 46 L.Ed. 2d 598 (1976)
Illinois v. Gates, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 7C L.Ed.2d 527 (1983)
Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879 (1949)
United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 476-77, 38 L.Ed.2d 427 (1973)
Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989)
Miller v. Lovett, 879 F.2d 1066 (2d Cir. 1989)
Esposito v. Buonome, 647 F.Supp. 580 (D. Conn. 1986)
Conn. Gen. Stat. §§ 53a-22(b) and 53a-23

## REQUEST TO CHARGE #5

## PROXIMATE CAUSE

On the other hand, if you have found a violation of the plaintiff's constitutional rights, you must also determine whether such violations were the proximate cause of the injuries plaintiff claims to have suffered.  "Proximate cause" means that cause or act which, as a natural sequence, produces the plaintiff's injuries and without which the injuries would not have resulted.  In other words, the defendants' wrongdoing must be a substantial factor in producing those injuries or must have a sufficiently close relationship to the injuries suffered by the plaintiff.

In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of the defendant.  For example, if you found that the plaintiff complains about an injury that would have occurred even in the absence of the defendant's conduct, then you must find that the defendant did not proximately cause the plaintiff's injury.  Likewise, the defendant is not liable if the plaintiff's injury was caused by a new or independent source of an injury, or the plaintiff's own actions, which intervenes or supercedes the defendants' acts or omissions and the plaintiff's injury under circumstances where the resulting injury was not reasonably foreseeable by the defendants.

Here, you have heard evidence from the defendants that the plaintiff was never subjected to excessive force.  Based on the testimony you have heard, you must enter a verdict in favor of the

19

defendants if you believe that the defendants did not use excessive force on the plaintiff.

Graham v. Western Line Consolidated School District, 439 U.S. 410, 99 S.Ct. 693 (1979)
Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568 (1977)

20

**REQUEST TO CHARGE #6**

**QUALIFIED IMMUNITY**

Even if you were to find that the defendants violated the plaintiff's civil rights as alleged, your inquiry is not complete.  The defendants still may not be liable to the plaintiff.  This is so because the actions of police officers are protected from liability by what is termed qualified immunity.  This means that you must return a verdict in favor of the defendants unless you find that their alleged actions violated clearly established constitutional rights of the plaintiff at the time they acted.

Qualified immunity focuses upon the objective reasonableness of an officer's acts at the time he acted.  The question of qualified immunity is distinct from the issue of probable cause.  The qualified immunity afforded to police officers is essential to ensure that police officers will not shy from their socially critical duties for unnecessary fear of personal liability if, in hindsight, their reasonable judgment is mistaken.  The qualified immunity doctrine therefore necessarily contemplates a margin of error.  The "objectively reasonable test" has become the accepted means of evaluating police officers' qualified immunity.  In order to impose liability on the defendant police officer, the plaintiff must show that no reasonably competent police officer would have acted in such a manner, that is, that the officer either deliberately set out to violate the constitutional rights of a plaintiff or was deliberately indifferent to the constitutional rights of a plaintiff.  A plaintiff must show that the conduct of the defendant was illegal and that it was so illegal that it violated clearly

established law.

Therefore, you must ask yourself what a reasonable officer in the defendants' situation would have believed about the legality of their conduct.  If you find that at the time of the arrest it was objectively reasonable for the officers to believe that their actions did not violate the plaintiff's established civil rights, then the defendants are entitled to qualified immunity and are not liable to the plaintiff.

Anderson v. Creighton, 483 U.S. 635 (1987)
Malley v. Briggs, 475 U.S. 335 (1986)
Harlow v. Fitzgerald, 457 U.S. 800 (1982)
Magnotti v. Kuntz, 918 F.2d 364 (2d Cir. 1990)
Warren v. Dwyer, 906 F.2d 70 (2d Cir. 1990)
Powell v. Gardner, 891 F.2d 1039 (2nd Cir. 1989)
Merriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989)
Robinson v Via, 821 F.2d 913 (2d Cir. 1987)

22